### JAMES R. LANE

*v.*

### JESSE M. ALLEN *et al.*

*Filed at Ottawa May 12, 1896—Rehearing denied October 13, 1896.*

1. MORTGAGES—*stipulation in trust deed as to partial release upon part payment construed.* A stipulation in a trust deed that the premises may be subdivided, and that on payment of a certain sum or more at any time a part or parts of the premises shall be released therefrom, to be determined at certain rates per front foot or by the trustee, does not require that the subdivision shall precede payment, but a release may be had for previous payments upon a subsequent subdivision.

2. SAME—*provision for release of portions of premises upon partial payments enforcible.* A mortgagor is not bound to pay the whole indebtedness in order to enforce a provision of the mortgage for a release of a portion of the premises upon certain partial payments.

3. EVIDENCE—*stipulation in trust deed not varied by parol evidence.* The provision of a trust deed for a release of part of the premises upon certain payments cannot be varied by parol evidence that the lots to be released were to be sold to *bona fide* purchasers.

*Lane* v. *Allen,* 60 Ill. App. 457, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

ARND, EVANS & ARND, for appellant.

FRAKE & PEAKE, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellees filed their bill June 20, 1894, to foreclose a trust deed. Appellant was made a party defendant, and filed his cross-bill to compel a release of a portion of the premises under a stipulation in the trust deed for partial releases on payment of $500 or more at any time or times on the indebtedness secured thereby. Appellees answered the cross-bill, admitting that there was a provision in the trust deed as stated in said cross-bill, but denying that it applied to payments made before a subdivision of the premises, and claiming that the right to partial releases was fixed by a different agreement, under which lots were to be released when sold to owners who should put permanent improvements on the same. The issues on the cross-bill were referred to a master in chancery, who took the proofs of the respective parties and reported the same to the court, with his conclusion that appellant was entitled to a release of a share of the premises as prayed, based upon the payments made by him. Exceptions to the master's report were sustained by the court and the cross-bill was dismissed for want of equity. The Appellate Court has affirmed the decree of dismissal.

The material facts are as follows: On June 4, 1891, Lane entered into a written contract with Jesse M. Allen and Evelyn A. Frake for the purchase from them of the premises covered by the trust deed, by which they agreed to convey the same to him, or to whomsoever he might designate, upon compliance with the terms of the contract. The purchase price was $13,140, of which $250 was paid when the contract was made, $3035 became due August 1, 1891, and for the balance ($9855) Lane was to give promissory notes, three of which were to be payable

to Allen and three to Evelyn A. Frake, and they were to be secured by the trust deed to James Frake. In accordance with the provisions of the contract Lane designated Herbert L. Bailey as the person to receive the deed, and the notes and trust deed were made in Bailey's name. It was stipulated in the contract that the trust deed should contain the following provision, which was accordingly inserted therein: "It is provided and agreed herein on the part of the parties in interest herein, that said above described premises may be subdivided, and that on payment of $500 or more, at any time or times, on the indebtedness secured hereby, a part or parts of said premises shall be released therefrom, the amount to be so released to be determined as follows, to-wit:" Then followed the manner of determining the amount at certain rates per front foot therein stated, provided there should not be less than 2400 feet of frontage, but otherwise the amount to be released on a payment was to be determined by the trustee, James Frake. Bailey conveyed the premises, at the request of Lane, who was the real party in interest, to Alfred B. Church. A subdivision of the premises was made with a frontage of more than 2400 feet, block 1 having forty-nine lots and block 2 containing fifty-two lots. Church conveyed to Lane, and Lane to A. J. Vesey, who secured part of the purchase money by a junior incumbrance on the lots sought to be released by the cross-bill. Vesey conveyed to Andrew A. Brock, subject to the incumbrances, and when the cross-bill was filed Lane held the junior incumbrance, and sought a release of lots 1 to 10 inclusive, in each of said blocks 1 and 2, from the trust deed, out of the way of his incumbrance, in accordance with said stipulation. He had paid to the trustee $591.30 June 27, 1892, and $3332.90 August 19, 1892, on the indebtedness secured by the trust deed, and had repeatedly made demands of the trustee for such release, tendering a release to be executed together with $3 as a fee for its execution, but

the trustee on each occasion had refused to execute such release.

The subdivision was made in July, 1893, and the refusal to release is attempted to be justified on the ground that such subdivision of the premises must precede the payment in order to entitle the party paying to a partial release. The provision, however, will not bear such a construction. The right to a release depended upon the payment of money, and the only connection that a subdivision had with such right was to furnish a basis for determining what proportion of the premises should be released. A rate per front foot was fixed for corner lots and for property on the Elston road, and a different rate for other lots. The subdivision was only mentioned in connection with the release as fixing the right to the quantity of land to be released. The provision could not be operative unless there should be a subdivision, so that the quantity to be released could be determined, but whether the subdivision was before or after the payment was immaterial. Some evidence was introduced on the part of the defendants, before the master, that in the negotiations it was said that the lots to be released were to be sold to *bona fide* purchasers after a subdivision. But this evidence was disregarded by the master, and this was right. There was no such condition contained in the contract or trust deed, and the contract could not be varied by evidence of the conversations during the negotiations.

It is suggested by counsel that he who demands equity must do equity, and that Lane should have paid up the whole indebtedness, and not asked to have that released upon which he had paid without paying the rest. It was agreed by the trust deed that partial releases should be executed upon partial payments being made, and it is admitted that such payments were made. The agreement for partial releases did not depend, in any degree, upon a complete payment, but the sole object of the

partial release clause was to have a release of a portion of the premises on partial payment and without a full payment. It cannot be said that it would be inequitable to compel the parties to carry out their contract, unless relief is barred under some rule of equity. There is no claim nor any evidence that Lane has done anything that could estop him from insisting upon his contract. The bill in this case was filed immediately after the maturity of the last note, and it was not shown that the parties had suffered in any manner or delayed enforcing their rights, relying upon the security upon the whole tract, as was the case in the only authority cited by appellees on this question, where the parties delayed foreclosure for a year and a half, during which they thought, and had a right to think, the mortgage covered the whole land.

It is said that Lane chose the best lots in demanding a release. It would be singular if he did not make such a selection; but the demand was in accordance with the agreement, which fixed different rates for lots according to their location. The fact that he exercised his right to make such a selection cannot affect his claim. The taxes on the premises had not been paid, and Lane paid to the trustee $30 for the tax on that portion which he asked to have released. This portion constituted one-fifth of the premises, and the amount tendered was more than one-third of the whole tax. This part was undoubtedly more valuable in proportion to frontage than some other parts of the subdivision, but it appears that the amount paid was equal to the proportionate share of the tax chargeable to this part of the premises.

The allegations of the cross-bill were sustained by the proof. The judgment of the Appellate Court and the decree of the Superior Court of Cook county are reversed, and the cause is remanded to the latter court, with directions to enter a decree in accordance with the prayer of the cross-bill.          *Reversed and remanded.*