## Joseph O. Morris v. Calumet and Chicago Canal and Dock Co.

1. TRUST DEED—*Not to be Varied by Conversations of the Parties Leading up to its Execution.*—The conditions of a trust deed can not be varied by evidence of conversations of the parties to it during the negotiations leading up to its execution.

2. PRESUMPTIONS—*As to Written Contracts.*—When a contract is reduced to writing, the presumption is that the entire actual agreement of the parties is contained in it, and oral testimony as to conversations prior to its executions, is not admissible.

3. SET-OFF—*In Courts of Equity.*—Courts of equity, following the law, will not allow a set-off of a joint debt against a separate debt, or a separate debt against a joint debt, nor a set-off of debts accruing in different rights, except under very special circumstances, and where the proofs are clear and the equity strong.

4. EVIDENCE—*Of the Ownership of Notes Secured by a Trust Deed.*—The possession of notes secured by a trust deed and the introduction of them in evidence, in a proceeding to foreclose such deed, is *prima facie* proof of ownership.

5. SAME—*As to Existing Liability on Notes.*—The introduction in evidence of uncanceled notes by a party claiming under them is *prima facie* evidence that such notes are existing liabilities.

Foreclosure of a Trust Deed.—Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899. Affirmed. Opinion filed October 23, 1900.

**Statement.**—This is a suit to foreclose a trust deed made to secure notes executed by appellant and one Franklin W. Ganse, dated January 1, 1895.

Appellant filed his answer, and also a cross-bill, admitting the execution of the notes and trust deed in question, but setting up additional matter by way of defense, to the effect that, in 1890, he, with others, negotiated with appellee for the purchase of the property, a part of which is described in the trust deed sought to be foreclosed; that at the time of the negotiations the purchase price was agreed upon, and that, as a further consideration, it was agreed verbally that appellee should give appellant an agreement in writing at any time, upon demand, to release from the liens of any trust deed given to secure the unpaid balance of the purchase money, upon payment of any portion of the secured debt, a corresponding portion of the incumbered property, in the proportion that the sum paid should bear to the entire debt; that relying upon such agreement for release, appellant completed the purchase, paid the sum agreed upon and executed notes and a trust deed for the balance of the purchase price; that immediately thereafter he caused to be prepared a plat of subdivision of said land into lots and blocks, which he took to appellee and made request for the written agreement to release the lots aforesaid, and also requested appellee to approve said plat; that appellee stated again that it would make said agreement, but must consider further as to details; that appellee delayed for more than a year before finally consenting by a separate and distinct instrument to the plat of said subdivision, and that by this time the property had largely depreciated and the market for same had ceased; that if appellee had kept its said agreement, appellant would have been able to dispose of the property at a large profit, far in excess of the amount claimed in the present foreclosure.

It is further set forth that the notes and trust deed now sought to be foreclosed were given January 1, 1895, in renewal of the unpaid balance of the said original debt, the trust deed containing a similar agreement for release.

Frank S. Shaw, attorney for appellant.

Joseph O. Morris, *pro se;* Thomas D. Penry, of counsel.

John W. Green and Green & Pringle, attorneys for appellee.

John S. Cooper, attorney for Emil Rudert, a party in interest.

Mr. Justice Freeman delivered the opinion of the court.

Appellant states that " there are practically but two broad questions to be considered." These are, first, whether the testimony offered on behalf of appellant to sustain his claim for damages was competent, and the alleged verbal agreement void under the statute of frauds; and second, whether the notes and trust deed of January 1, 1895, now sought to be foreclosed, were executed in settlement of the claims of appellant.

There was evidence tending to show, as found by the master, that at the time the original trust deed was produced by appellee for appellant's execution, the latter called attention to the omission therefrom of a clause providing that the purchaser should be allowed to subdivide the purchased tract and submit such subdivision to the vendor, and that upon payment on any lot of its ratable proportion of the total debt a release should be executed; and evidence that appellant was then told by the vice-president of the appellee company that " there was friction in the board of directors of appellee regarding the release clause," and that it had better be omitted, but that as soon as a subdivision was made the appellee would consent to it, and the release would be executed as before agreed upon; and that relying upon such statement the original trust deed was executed. About a year thereafter such an agreement was embodied in a separate and distinct instrument.

It is practically conceded by appellant that such a verbal agreement relating to the sale of an interest in or concerning lands is void under the Statute of Frauds, unless the vendor is guilty of fraud, as in Bozza v. Rowe, 30 Ill.

200.  But it is evident from the statement of facts as made
by appellant himself, that no fraud was practiced in the
present case to obtain the execution of the original trust
deed without the insertion of the release clause.  Appel-
lant took his chances, and executed the trust deed, knowing
that there was "friction" in the appellee's board of direct-
ors regarding the release clause in question.  He relied
wholly on the statement of appellee's vice-president that
appellee would consent when the subdivision was made.
This was evidently a mere expression of opinion by the
officer in view of what had transpired.  Appellant knew
that so much "friction" then existed in the board of direct-
ors of appellee as to prevent the insertion of the release
clause in the trust deed as he had requested and he took his
chances as to its abating when the plat and subdivision
were made.  There is certainly in this no evidence of fraud
on the part of appellee or its officer.  The language used
in Lane v. Allen, 162 Ill. 426, on page 429, is applicable,
where it is said, referring to a trust deed, "The contract
could not be varied by evidence of conversation during the
negotiations."  See also Smith v. Price, 39 Ill. 30.  The
presumption must undoubtedly be, that the entire actual
agreement of the parties with reference to the obligation ·
incurred in the trust deed, was reduced in writing, and oral
testimony as to conversations prior to the execution of the
instrument must be rejected.  U. N. Bk. of Chicago v. L.,
N. A. & C. Ry. Co., 145 Ill. 221.

But if appellant was entitled or thought he was entitled
to damages for the failure to insert such so-called release
clause in the original trust deed of 1890, he must be deemed
to have waived such claim, when he executed the notes and
trust deed of January, 1895. · He states that in conversa-
tion with the president of the appellee company about that
time, he referred to the damage he claimed to have suffered
because of the failure of the appellee to insert the release
clause in the original trust deed, and the subsequent delay
in approving the subdivision.  He states that said presi-
dent said it was unnecessary to discuss those questions, but

that he thought under all the circumstances appellant ought to have an extension of the indebtedness. The result was the execution of the notes and trust deed now sought to be foreclosed. If appellant had a valid claim for damages which he felt himself entitled to enforce, that was the obvious and natural time to assert it. Instead of so doing he speaks of the matter as a ground for asking time, but asserts no claim for any sum whatever as damages. It was not necessary that he should in words abandon a claim which he had, so far as appears, never asserted. If we assume the validity of such claim his failure to assert it at that time and his execution of the new notes and trust deed should equitably estop him from now contesting his liability thereunder. He received the benefit of the extension in part apparently because he claimed to have been unfairly treated in the original transaction. Under such circumstances he must be held to have waived any objection to the liability he then assumed.

It further appears that appellant was not the sole maker of the original notes. That obligation was joint. He now seeks to offset an alleged liability for damages to himself and another, against his individual and separate debt. This he can not be permitted to do. Dameier v. Bayor, 167 Ill. on page 547, and cases there cited. In Scammon v. Kimball, Assignee, 92 U. S. 367, it is said :

" Courts of equity following the law will not allow a setoff of a joint debt against a separate debt, or a separate debt against a joint debt; nor will such courts allow a setoff of debts accruing in different parts except under very special circumstances, and where the proofs are clear and the equity strong."

Objection is made to the finding of the decree in favor of defendant Emil Rudert. The objection is that no evidence was offered as to the ownership of the notes and trust deed introduced by Rudert, and no evidence that said notes were still unpaid. The possession of the notes and trust deed and their introduction in evidence by Rudert, constitutes *prima facie* proof of ownership. Stiger v. Bent, 111 Ill. 328. The same is true as to payment. The intro-

duction of the uncanceled notes by the party claiming there-under is *prima facie* evidence that they are existing liabilities.

We find no error in the decree of the Circuit Court and it is affirmed.