[No. 8382.    Department Two.    May 3, 1910.]

## W. W. WHIPPLE, *Appellant*, v. D. H. LEE *et al.*, *Respondents.*[1]

APPEAL—DECISIONS REVIEWABLE—DISMISSAL—CESSATION OF CONTROVERSY. An appeal from a decree of specific performance requiring the payment of a certain sum within 120 days, without any supersedeas bond being given, will not be dismissed after the expiration of the 120 days because of cessation of the controversy, where the appellant claims that the decree required the payment of an excessive sum; since if reversed, the appellant would be entitled to a reasonable time within which to pay the proper sum.

SPECIFIC PERFORMANCE—PARTIES ENTITLED—PARTNERS. Plaintiff suing for specific performance of a contract made by a corporation to sell land to himself and one L. cannot enlarge his interest to the exclusion of L. by reason of the fact that L. was interested in and controlled the corporation making the sale, and aided the corporation in its defense and would be benefited by defeating the action.

EVIDENCE—TO EXPLAIN WRITING—AMBIGUITY—VENDOR AND PURCHASER—CONTRACTS. A contract for the sale of land is ambiguous so as to admit parol evidence of circumstances to show whether the price was $150 per acre, or that sum plus certain mortgages on the land, where it fixed the price at $150 per acre and recited that there were certain mortgages on part of the land, to be released on the

[1]Reported in 108 Pac. 601.

payment of specified sums, and provided that the purchasers were
to pay all the taxes and interest and the mortgage or mortgages
as they became due, and if not so paid, the agreement to be in-
operative as to the lands covered by the mortgage or mortgages,
which was to revert to the vendor.

Appeal by plaintiff from a judgment of the superior court
for King county, Yakey, J., entered March 23, 1909, de-
creeing the specific performance of a contract, after a trial
on the merits before the court without a jury.   Modified.

*Holcomb & Kirkpatrick*, for appellant.

*S. M. Brackett* and *Walker & Munn*, for respondents.

CROW, J.—This action commenced by W. W. Whipple,
against D. H. Lee, the American Investment & Improvement
Company, a corporation, and others, to enforce specific per-
formance of a contract for the sale of real estate. An opinion
on a former appeal, affirming an order appointing a receiver,
is reported in *Whipple v. Lee*, 42 Wash. 266, 89 Pac. 712.
The plaintiff now seeks specific performance of the contract,
as successor in interest to J. R. Young.   A decree of specific
performance was entered.   The plaintiff, however, has ap-
pealed, contending that the decree requires him to pay an ex-
cessive consideration for the land.

One hundred and twenty days were granted by the decree
to the appellant, within which to pay for the land and ob-
tain a conveyance.   No supersedeas bond has been given, and
the one hundred and twenty days have expired.   The respond-
ents now contend that the appellant cannot hereafter make
payment, or demand a deed; that the controversy has ceased,
and therefore move to dismiss the appeal.   There was nothing
for the appellant to supersede.   Whether his time for per-
formance would or could be extended by an order of this court
in the event of an affirmance, we need not now discuss.   The
appellant considered himself aggrieved, in that the decree
required him to pay too large a consideration.   He was en-
titled to an appeal without giving a supersedeas bond.   The

trial court did not intend to, nor did it, deprive him of his right to an appeal by fixing a time for payment which would expire before his appeal, if taken, could he heard in this court. If, on consideration of his appeal, it is established that the decree did require him to pay an excessive price for the land, he would be entitled to a reversal and a reasonable extension of time within which to make payment, under such a decree as this court might order. He might have been unwilling or unable to pay the excessive consideration which he contends was erroneously fixed by the trial court, but willing and able to pay the lesser consideration. In the event of a reversal, he should be accorded the latter privilege. The motion to dismiss is denied.

A number of questions have been raised, but as, in all respects save one, we concur with the findings and conclusions of the trial judge, we will confine ourselves to a consideration of appellant's contention, that the trial court erred in finding that J. R. Young and D. H. Lee had contracted to pay $150 per acre for the land sold, and in addition thereto had also contracted to pay three mortgage liens amounting to $26,500. The record includes a voluminous statement of facts. It is, therefore, manifest that a detailed discussion of the evidence upon which we predicate our conclusions cannot be incorporated in an opinion of reasonable length. Some statements, however, must be made. During the year 1904, the American Investment & Improvement Company, hereinafter called Investment Company, acquired title to a large tract of land, including 158.25 acres involved in this action. On 53.25 acres it executed a mortgage to the Robertson Mortgage Company, a corporation, for $7,500, and on all the remainder it executed first and second unpaid purchase money mortgages to Knight & Williams, copartners, for about $16,000 and $3,000 respectively. On November 20, 1905, it sold the 53.25 acres covered by the Robertson Company mortgage, and about 105 acres or part of the land covered by the Knight and Williams mortgages to D. H. Lee

and J. R. Young, by the written contract upon which this action is based, the contract reading as follows:

"This Agreement, made and entered into at Seattle, Washington, by and between the American Investment & Improvement Company, a corporation, party of the first part, and D. H. Lee and J. R. Young, co-partners doing business under the firm name and style of Lee & Young, parties of the second part.

"Witnesseth: That, Whereas, the party of the first part is the owner of the following described lands, situated in the county of King, State of Washington, to wit: (Description of 153.75 acres.)

"And whereas the said party of the first part is desirous of disposing of the said lands in large tracts, and

"Whereas, the said parties of the second part are a co-partnership formed for the purpose of dealing in real estate and particularly for handling and selling outlying properties.

"Now, therefore, in consideration of one dollar, and other valuable consideration, the party of the first part hereby agrees with the parties of the second part to sell to the parties of the second part or their assigns, the above described lands, upon the agreed price of one hundred and fifty dollars ($150) per acre, and the parties of the second part hereby agree with the party of the first part to buy from the said party of the first part the said lands, and to pay therefor at the rate of one hundred and fifty dollars ($150) per acre, and the commissions and compensation for selling and handling the said real estate or any portion thereof, by the said parties of the second part, shall be whatever sum the parties of the second part shall receive over and above the one hundred and fifty dollars ($150) per acre, and none other.

"The party of the first part further agrees with the parties of the second part that

"Whereas, There are certain mortgages on the said lands, to become due, and interest and taxes to become due thereon, and on payment of the sum of Six Thousand Dollars ($6,000), by the parties of the second part to the first part, that, it, the first party will release the N. W. ¼ of the S. W. ¼, section 27, township 26 N. R. 4 E., Willamette Meridian, and on the payment of another and additional six thousand dollars ($6,000) by the parties of the second part to the party of the first part, the first party agrees to release from

the said mortgage lot three (3) and sufficient of the N. E. 1/4 of the S. W. 1/4 same section, township and range, to make forty (40) acres.

"The said parties of the second part further agree with the party of the first part to pay all the taxes and interest and the mortgage or mortgages, as the same or any of them become due and payable, on the said lands, and if not so paid by the parties of the second part, then and in that event this agreement shall become inoperative as to the lands still covered by such mortgage or mortgages and agreed by the party of the first part to be conveyed to the parties of the second part, and the same shall revert to and remain the property (together with all its rights, privileges and franchises) of the party of the first part. . .

"It is finally mutually agreed that the agreements, covenants and promises herein contained shall extend to the successors and assigns of the party of the first part, and to the heirs, executors, administrators or assigns of the parties of the second part.

"In witness whereof," etc.

On April 19, 1906, the interest of J. R. Young was assigned to the appellant Whipple, and the copartnership of Lee & Young was succeeded by the copartnership of Lee & Whipple. Shortly thereafter the Investment Company, aided by D. H. Lee, attempted to cancel the contract and terminate all rights of Lee & Young and Lee & Whipple thereunder. Other contracts, agreements, and conveyances, both before and subsequent, some affecting only the land here involved and others affecting the entire or larger tract of which it was a part, were executed by the Investment Company and by D. H. Lee, with various parties. Differences, disputes, and litigation ensued, causing receivers to be appointed, but the controlling question now before us, all others being eliminated, is how much consideration were Lee & Whipple, as successors to Lee & Young, required to pay the Investment Company for the 158.25 acres of land. The appellant contends they were to pay $150 per acre only; while the respondents insist they were to pay, in addition

thereto, all three mortgages above mentioned, amounting to $26,500. In other words, that they were to pay $150 per acre, and in addition thereto to discharge the mortgage lien, not only on the land they were buying, but also on all of the larger tract retained by the Investment Company.

Although D. H. Lee, partner of the appellant Whipple, contends the contract has been forfeited and terminated by the Investment Company, he insists that, if it is to be specifically enforced, he is entitled to participate in the fruits of this litigation. At the same time he contends that the consideration for the land includes full payment of all the mortgages, as also does the respondent Investment Company. Throughout this litigation he has continually aided and abetted the Investment Company, apparently against his own interest. This conduct can only be explained upon the theory that his interests and those of the Investment Company are identical. If the company wins, he wins; but if, on the other hand, the appellant succeeds, he, as a member of the firm of Lee & Whipple, insists on sharing the fruits of that victory. The appellant contends that respondent Lee, by reason of his attitude, is not entitled to share in the benefits of a decree enforcing specific performance of the contract, and that the appellant alone should be permitted to perform the contract upon the part of the vendees. It is apparent that the appellant's interest cannot be increased by reason of any inconsistent acts of Lee. Appellant's contention in this regard cannot be sustained.

A careful perusal of the contract shows that it is ambiguous, and that extrinsic evidence must be admitted to aid in its interpretation. The trial court, assuming that this court might consider the contract ambiguous, to aid its interpretation, admitted evidence of surrounding circumstances, contemporaneous agreements, the construction of the parties themselves, and their acts pertaining thereto. Upon consideration of this evidence we conclude that the purchase price was to be $150 per acre only; that $19,500 thereof

was to be applied as payments on the mortgage indebtedness so as to release from the mortgage all of the land sold; that any remainder was to be paid to the Investment Company, and that Lee & Whipple, upon performance by them, were to be entitled to all other interests in the land. Respondents contend that 158.25 acres at $150 per acre would not produce sufficient funds to pay $26,500, the total amount of principal mentioned in the three mortgages. In the light of the evidence we do not construe the contract as directing an application of the purchase money to the payment of the entire $26,500. By the terms of the mortgages to which the contract referred, the payment of $19,500 only was needed to discharge the three mortgage liens on all of the 158.25 acres sold to Lee & Young. The Knight & Williams mortgages expressly stipulated that all of the land subject to their liens, and afterwards sold to Lee & Young, was to be released upon the payment of $12,000. This being true, such payment when made would entitle any interested party to demand the release. Should the mortgagees refuse, the Investment Company or Lee & Whipple, its grantees, could have compelled them to execute and deliver the releases. 27 Cyc. 1415, *Gammel v. Goode*, 103 Iowa 301, 72 N. W. 531; *Lane v. Allen*, 162 Ill. 426, 44 N. E. 831; *Obern v. Gilbert*, 6 Dak. 119, 50 N. W. 620.

J. R. Young, Lee's former partner, who is not interested in the result of this litigation, testified that, before Whipple acquired his interests, Lee & Young attempted to negotiate a sale of the 158.25 acres at $200 per acre, which would yield them a profit; that he and Lee participated in these negotiations, Lee also representing the Investment Company. It is manifest from this evidence that, if they had previously contracted to pay $150 per acre, and also the mortgage liens for the land, they were striving to sell for less than cost and not at a profit. These statements, although denied by Lee, harmonize with the evidence of other witnesses, also denied by him, to the effect that at other times

he repeatedly offered to sell for less than he now contends Lee & Young were to pay for the land. To reach the conclusion for which the respondents contend, we would be compelled to rely upon, credit, and accept evidence of D. H. Lee, which we think has been effectually contradicted and refuted by undisputed circumstances, other written contracts, records of court proceedings, and the testimony of numerous witnesses. Although the trial judge admitted extrinsic evidence to aid in an interpretation of the contract in case such evidence should be held proper by this court, we incline to the view that he must have reached his own conclusions from the contract itself, without the aid of extrinsic evidence, and that in so doing he erred.

We regret that the volume of the record forbids a detailed statement and discussion of the facts upon which we predicate our conclusions. This cause is before us for trial *de novo*. Having examined all the evidence we cannot accept the statements of D. H. Lee upon which the respondents are compelled to rely, and do rely. He has controlled the business affairs of the Investment Company since its organization. All of its acts have been performed at his instance. He has dominated its policy. With the exception of two minor officers of the corporation, who seem to be subject to his dictation and control, he has disagreed and found fault with nearly every person with whom he has come in contact. He has critcised one Owen, a former secretary of the Investment Company, accusing him of wrongfully doing away with the original minute book. He has charged Knight & Williams with wrongful and fraudulent acts. He charges that J. R. Young, his first partner; the appellant Whipple, his second partner; the Vanderventer-Davis Company, a corporation, and one Hayes, its manager, have violated their agreements with him, and he has attempted to forfeit their contracts. In his evidence he, by innuendo, accused the receiver, the receiver's attorneys, and other parties, with mutilating the

minute book of the corporation in an attempt to discredit him. He positively contradicted statements of many disinterested witnesses. In brief, he seems to be in harmony with no one, and unable to transact business satisfactorily on any occasion. He was voted, and claims to have earned, a salary of $5,000 from the corporation, although its records and business affairs have assumed a most deplorable tangle during his administration. During the same period he contracted to give substantially all of his time to the business of Lee & Young. The minute book which he introduced in evidence to sustain his contentions is, by reason of its history and condition, unworthy of serious consideration. A written contract between the Investment Company and Lee & Young, as parties of the first part, and Vanderventer-Davis Company, as party of the second part, executed January 20, 1906, sustains the appellant's position as to the purchase price, although the respondents vigorously contend that it cannot be so construed. In referring to the contract upon which this action is predicated, it contains the following recital:

"And whereas, the said American Investment and Improvement Company made a contract on the 20th day of November, 1905, with D. H. Lee and J. R. Young, copartners as Lee & Young, for the sale and purchase of the said lands at the set price of one hundred and fifty dollars ($150.00) per acre, to be paid by the said Lee & Young to the American Investment & Improvement Company."

Later statements in this contract to which respondents refer do not, in our opinion, negative this statement. Further discussion is unnecessary.

We hold that the price to be paid by the appellant and D. H. Lee was $150 per acre only, and that it should be first applied to the satisfaction of the mortgage liens on the 158.25 acres only. It is ordered that the decree of the trial court be modified in accordance with this opinion; that a further extension of the time, to be fixed by the trial court, be granted the appellant for the performance of the con-

tract, and that otherwise the judgment be affirmed. The appellant will recover his costs on this appeal.

RUDKIN, C. J., PARKER, DUNBAR, and MOUNT, JJ., concur.