CHRISMAN *et al.* *v.* HAY *et al.*

*(Circuit Court, S. D. Iowa, W. D.* October 7, 1890.)

1. VENDOR'S LIEN—QUITCLAIM DEED.
   Under Code Iowa, § 1940, which provides that no vendor's lien shall be enforced after a conveyance by the vendee, unless such lien is reserved by written instrument, acknowledged and recorded, or unless such conveyance is made pending suit to foreclose the lien, a quitclaim deed by the vendee is sufficient to bar a vendor's lien not evidenced by writing.

2. MORTGAGE—FORECLOSURE.
   A mortgage for $25,000 on a large number of lots provided for the release of "any five or more lots at any time hereafter" upon payment of $32 per lot. *Held*, that purchasers from the mortgagor, after his default in paying the mortgage debt, but before foreclosure suit was begun, might have their lots released for $32 each; but that the mortgagor's right to a release on those terms expired when such suit was begun.

In Equity. Bill for foreclosure of mortgage and enforcement of vendor's lien. Submitted on pleadings and proofs.

*Flickinger Bros.*, for complainants.
*Stone & Sims, Wright & Baldwin*, and *Sapp & Pusey*, for defendants.

SHIRAS, J. In the spring of 1887 the complainants, James S. Chrisman and George W. Robards, were the owners of certain realty in Pot-

tawattamie county, Iowa, known as "Manawa Park," and in May of that year they sold the same to Hattie A. Hay. To secure the payment of $25,000 of the purchase price, said Hattie A. Hay executed six promissory notes; three thereof, aggregating $8,333.33, being payable to the order of George W. Robards, and three, aggregating $16,666.67, being payable to the order of James S. Chrisman, and coming due in one, two, and three years, with interest at the rate of 7 per cent. To secure these notes the said Hattie A. Hay and her husband executed a mortgage upon blocks 1 to 32, inclusive, "of the lots contained in Manawa park as per plat thereof," which contained the following stipulation:

"And it is hereby agreed and part of this contract that, upon the payment of $32.80 per lot and accrued interest, said James S. Chrisman and Geo. W. Robards agree to release any five or more lots, at any time hereafter when called upon to do so, at expense of 2nd party."

The mortgage also contained a stipulation to the effect that, upon a failure to pay any part of the principal or interest, then the whole of the sum secured should become due and payable. August 10, 1889, the present bill was filed for the foreclosure of the mortgage in question; the notes maturing in April, 1887, and 1888, being unpaid. It is also averred in the bill that the premises in the mortgage described, to-wit, the 32 blocks therein named, do not include all the property sold by complainants to said Hattie A. Hay; that the mortgage should have included the same, but that, through the misrepresentation of Hattie A. Hay and her husband, complainants accepted the same in the belief that the mortgage covered the entire property; and it is therefore prayed that complainants may be decreed to have a vendor's lien upon that part of the premises not covered by the mortgage.

It appears from the evidence that the portion of the premises on which the lien is sought to be established, was conveyed by the vendee before this suit was brought, and therefore, under the provisions of section 1940 of the Code of Iowa, the lien is defeated. That section provides that—

"No vendor's lien for unpaid purchase money shall be recognized or enforced in any court of law or equity after a conveyance by the vendee, unless such lien is reserved by conveyance, mortgage, or other instrument, duly acknowledged and recorded, or unless such conveyance by the vendee is made after suit brought by the vendee, his executor or assign, to enforce such lien."

On behalf of complainants, it is urged that the premises sought to be subjected to the lien were conveyed by a mere quitclaim deed, and that the party holding under the same cannot assert any right thereunder as against complainants. It is true that a party holding under a mere quitclaim deed cannot be heard to assert that he is an innocent purchaser for value. *Oliver* v. *Piatt*, 3 How. 410; *May* v. *Le Claire*, 11 Wall. 217. The statute just cited changes the usual rule applied to equitable liens for the unpaid purchase price of property sold. In the absence of a statute, it is held that the vendor's lien affects all purchasers from the original vendee who had notice of the existence of the lien when they bought the premises; and hence one holding under a quitclaim deed would be held to be charged with notice of the lien. The statute of Iowa

declares that, unless reserved in some written recorded instrument, a vendor's lien cannot be enforced after a conveyance of the property. The question of notice is eliminated from the case. The difference in the language used in this section and that found in the section in regard to recording instruments affecting real estate clearly indicates the different rule to be applied in construing the same. The latter declares that "no instrument affecting real estate is of any validity against subsequent purchasers for a valuable consideration, without notice, unless recorded," etc. Under this section an unrecorded instrument is invalid as against a subsequent purchaser for value without notice. Under the former section, a vendor's lien cannot be enforced after a conveyance by the vendee. To sustain the view of complainants, the court would be compelled to interpolate the words "to a purchaser for value without notice " after the word "conveyance," found therein, and this cannot be done. The statute expressly declares that, unless the lien is reserved in a written recorded instrument, such lien cannot be enforced after a conveyance of the property, unless such conveyance is made after suit for the enforcement of the lien has been brought; and the court cannot, by mere construction, radically change the meaning of the words used in the section. As a quitclaim deed will transfer the title and right actually held by the grantor therein, it is a conveyance, within the meaning of the section regulating vendor's liens. As the premises upon which it is sought to fasten a vendor's lien were conveyed to third parties by Mrs. Hay before the bringing of this suit, such conveyance defeats the right to a lien, and it is not necessary to consider the question made in argument, whether such lien could be enforced as against Mrs. Hay; it appearing that complainants had taken a mortgage to secure the purchase money upon part of the property.

The evidence also shows that a number of the lots included in the mortgage have been sold by Mrs. Hay and her husband, and the main question in dispute between the litigants is as to the effect of the agreement in the mortgage for the releasing the lien of the mortgage upon payment of the sum of $32.80, and interest, per lot. On part of the defendant, Mrs. Hay, it is contended that the right thus secured continues in force until the expiration of the year of redemption after sale; that, in effect, the mortgage creates a separate lien upon each lot for said sum of $32.80, and that any one or more of the lots may be redeemed by paying this sum, regardless of the total sum due. On part of complainants it is contended that this stipulation is in the nature of a privilege, and that, when Mrs. Hay failed to meet the payments provided for in the mortgage, she lost the right to exercise this privilege, and that parties purchasing lots from her since the date of the failure to pay the first note coming due stand in no better position, but must be deemed to have purchased subject to the lien of the mortgage for the full sum due thereon. From the evidence in the case, it is clear that, when the mortgage was executed, it was well understood between the parties that it was intended to sell the lots to purchasers, the premises having been platted for that purpose; and it is equally clear that sales could not be made if each small

lot was to remain subject to the lien of the entire mortgage debt. The stipulation found in the mortgage was evidently placed therein so that purchasers could be assured that the payment of the sum fixed, *i. e.*, $32.80 and interest, to the mortgagees, would release the lot purchased from the lien of the mortgage. So far as purchasers from Mrs. Hay are concerned, it must be held that all who became such before the bringing of the present suit are entitled to the benefit of the agreement found in the mortgage; and by paying, if not already paid, the fixed price named in the mortgage, are entitled to hold the lots purchased free from the lien of the mortgage.

As already stated, the evidence shows that Mrs. Hay has failed to meet the payments she bound herself to make, and complainants are now compelled to resort to the mortgaged property to secure the sum due them. If it were held that Mrs. Hay could now select out the more valuable lots, and redeem them from the lien of the mortgage by paying the stipulated sum of $32.80 and interest, it would enable her to secure the benefit of the contract without meeting fully the obligations thereof. The mortgage she executed was, in terms, upon the entire property, to secure the entire debt; but following the granting clause is found the stipulation already cited, which, as already said, was inserted in order to enable her to sell the lots to purchasers, and for the protection of such purchasers. It now appears that she is no longer endeavoring to carry out her contract with complainants. The payments are largely in arrears, and the case is ripe for a decree of foreclosure and sale. Under such circumstances, it would work a fraud upon the rights of complainants if it were held that the mortgagor, while wholly in default on her part, should be permitted to select out the more valuable lots from the mortgagor's tract, and redeem them, leaving the less valuable unredeemed. As between Mrs. Hay and complainants, it must be held that the right to procure the release of portions of the mortgaged premises by paying the price named terminated when the present suit for the foreclosure of the mortgage was brought. The complainants are therefore entitled to a decree establishing the amount due them, respectively, upon the notes secured by the mortgage; due credit being given for all sums heretofore received from the mortgagors, or from purchasers under them of any portions of the property, and for all sums paid hereafter by parties who had purchased portions of the lots before the bringing of this suit, as hereinafter provided. Such purchasers of lots, in cases wherein the stipulated price of $32.80 and interest has not yet been paid to the complainants, must pay the same within 30 days from the date of this decree. At the expiration of said 30 days, the amount then due upon said notes will be computed, and, unless the sum due is by that time fully discharged, a final decree will be entered, foreclosing said mortgage upon all parts of said realty in the bill described as shall then remain unredeemed by purchasers, and ordering the sale thereof. As the mortgage provides that in case of foreclosure a reasonable attorney's fee shall be allowed, provision will be made in the final decree for the allowance of such sum as the parties may agree upon, or, if such agreement cannot be had, for such sum as the court may award.