ELIZABETH A. GAMMEL, Appellant, v. L. W. GOODE, *et al.*

Covenants: RELEASE OF MORTGAGE. A covenant in a mortgage for the partial release of one or more acres from its operation, on the payment at any one time of eight hundred dollars for each acre so released, runs with the land, and inures to the benefit of the grantee of the mortgagor, though the words "heirs and assigns" are not used in the covenant.

SAME. The right to a partial release, by the payment of a stipulated sum "at any one time," is available after default in payment, and the commencement of a foreclosure suit.

PARTIAL RELEASE. A mortgage on platted land stipulated for a partial release of one or more acres on the payment of a specified sum per acre, or of lots "on the same basis " *Held,* that, in determining the proportionate amount to be paid on the release of one of the lots, the streets and alleys in the acre should be taken into consideration, and payment need not be made for the land included in such streets and alley.

*Appeal from Polk District Court.*—Hon. W. A. SPUR-
RIER, Judge.

## MONDAY, OCTOBER 18, 1897.

LOWRY W. GOODE and Eldridge T. Likes purchased
of plaintiff ten acres of land for the agreed price of
seven thousand, five hundred dollars, the land being
platted into lots, and known as "Oakland," and a part
of the city of Des Moines. Goode and Likes executed a
mortgage on the land to secure the payment of notes
given for the purchase price. These notes were so given
that one matured January 1, 1885, and one each year
thereafter to January 1, 1891. The last two notes are
for one thousand dollars each, and this suit is based
thereon. Lot No. 32 is one of a series into which the land
was divided, and this action is to foreclose the mortgage
as to that lot, the other lots having been released from
the operation of the mortgage by virtue of a stipulation
in the mortgage to that effect upon partial payments of
the mortgage debt. The lot in question, as well as
others, was conveyed to E. J. Goode subject to the
mortgage in suit. E. J. Goode is a defendant and
answers, reciting his purchase of the lots, and the stip-
ulation in the mortgage by which the lots should be
released from the operation of the mortgage by the pay-
ment of a stipulated amount for each acre or lot; that
under such stipulation the amount necessary to release
the mortgage on lot No. 32, is one hundred and thirty-
eight dollars, but in no event will it exceed two hundred
dollars, and he offers to pay the amount found due by
the court; but insists that the lot is not liable for the
unpaid balance of the purchase price of the land. Plain-
tiff asks a foreclosure judgment for the full amount.
The district court found the lot liable for only one hun-
dred and thirty-eight dollars, with the interest thereon,

and gave judgment accordingly. The plaintiff appealed,
—*Affirmed.*

*N. B. Raymond* for appellant.

*Bishop, Bowen & Fleming* and *Earle & Prouty* for
appellees.

GRANGER, J. — I.    The stipulation in the mort-
gage is as follows:    "And it is hereby particularly
agreed between the above-named parties of the first and'
second part that the parties of the first part
shall have the privilege of receiving a release
of one or more acres from the operation of this
mortgage by the payment at any one time of eight
hundred ($800.00) dollars for each acre to be so
released, or they may receive releases of lots on the
same basis, provided that, in case lots are to be released,
the aggregate contents of same shall not exceed one
acre for each payment of eight hundred ($800.00) dol-
lars made under this agreement."    Under this stipu-
lation lots have been released from time to time, so
that but lot 32 now remains; and, if it is only liable for
a proportionate share of the purchase price of the land,
there will remain a part of such price unsecured.
The question is thought to turn largely upon whether
the covenant as to releases is one personal between the
parties to it or runs with the land.    On this question it
may be said that the authorities are somewhat in con-
flict.    Mr. Jones, in his work on Mortgages (volume 1,
section 79), speaking of such releases, says:    "Whether
such a covenant running only to the mortgagor without
mention of his assigns is personal in character and can-
not be enforced by a purchaser from him, is a question

upon which the authorities are not agreed; but the better view is that such a covenant runs with the land." Some cases attach importance to the absence of the word "assigns," or some equivalent expression, and hold such a covenant to be personal only. See *Pierce v. Kneeland,* 16 Wis. 672; *Squier v. Shepard,* 38 N. J. Eq. 331. These cases are determined upon somewhat different stipulations and facts from the case at bar. *Vawter v. Crafts* 41 Minn. 14 (42 N. W. Rep. 483), is a quite similar case to the one at bar, and such a covenant is held to be one running with the land. In that case it is said: "Much abstruse and technical learning has been wasted in discussing the question what are and what are not covenants running with the land. But we think it will be found, by considering the principles underlying the subject, that, according to the best considered modern authorities, the law corresponds with common sense, and annexes a covenant to the land, when the subject of it is something to be done or refrained from, about or touching, concerning or affecting, the covenantee's land (though not upon it), which would benefit the same, or increase its value in the hands of the holder." Such covenants are usually, if not always, induced by a purpose to sell parts of the land mortgaged, and to free it from the incumbrance. It was true in this case. In the Minnesota case cited it is said: "The rule, we think, is universal that the benefit passes with the land to which it is incident. In the case at bar the agreement or covenant is one relating to the rights of the parties in the land. It affects the title, and hence affects the value of the estate to the holder. The release is for the benefit of the owner; in fact, no one but the owner could be benefited by it." In *Frederick v. Callahan,* 40 Iowa, 311, in considering the question of a covenant running with the land, and the effect of the absence of the word "heirs" or "assigns," it is said: "Under our statute a covenant of

real property, even in fee, need not contain the word 'heirs' or 'assigns' in order to pass the title." It is also said in that case: "The performance of the covenant, on the part of the plaintiff, to build the house upon the land, became beneficial to the reversioner, and to no other person." That fact is especially true in this case. It seems true that the parties to the mortgage had in view the sale of lots, and provided a way for the purchasers to take the lots freed from the incumbrance. See, generally, on the question of such releases, *Nims v. Vaughn*, 40 Mich. 356. We think it the better rule, supported by the weight of authority, that the covenant runs with the land.

It is urged that the effect of such a construction is to defeat the intent of the parties to the mortgage wherein the land was pledged as security for the entire debt, and to become void on the payment thereof. It is doubtless true that the purpose of the mortgage was as security for all the debt, but there is no doubt about the purpose to release each acre upon the payment of eight hundred dollars. Had the lots not been platted, we do not think it doubtful that every acre must have been released upon the payment of the stipulated amount; and one can readily see that, with accumulated interest, the security for a part of the debt would have been lost. However that may be, it was the bargain, and the courts cannot import into it a provision to relieve from such consequences.

It is urged that the rights of E. J. Goode are not superior to those of the mortgagors. We are not, in this case, holding that they are. We do not determine that question. The covenant in the mortgage gives the right to the release to the mortgagor, and, as it runs with the land, it inures to the grantee of the mortgagor.

It is thought that the right is not available after default in payment, and the commencement of suit to

foreclose. There is no such limitation in the covenant. The right seems co-extensive with the existence of the mortgage. We do not see how the doctrine of laches can affect this right of release, under the terms of the stipulation. The only laches claimed is the default in payment. When E. J. Goode purchased the lot in question, he had the right to understand that, upon the payment of so much, he would be entitled to a release. The stipulation in the mortgage does not say upon payment of so much in a particular time, or without default, but on payment of so much "at any one time."

II. The district court fixed the amount necessary to release the lot from the mortgage at one hundred and thirty-eight dollars. In the answer of E. J. Goode it is said: "Defendants aver that in the platting of said ten acres there were laid off and and numbered on the plat four lots to the acre; and under the terms of said mortgage, as set out by plaintiff in her petition, the proportionate amount of incumbrance upon said lot 32, taking into consideration the streets and alleys, would amount to about one hundred and thirty-eight dollars, and, excluding the streets and alleys, to two hundred dollars, and they aver that the said proportionate amount to each lot would have paid off all the indebtedness secured by said mortgagee." It is thought that the answer is an admission that two hundred dollars is necessary to release the lot. We do not so construe the answer. In another paragraph it is said that when he purchased the lot it was estimated that the amount necessary to release would be one hundred and thirty-eight dollars, and the averment as to the two hundred dollars is to show the amount if it should be held that the streets and alleys are not to be excluded. The district court, as we understand, fixed the area by including the streets and alleys, and we think that is the correct solution of the question.

When the mortgage was made, the land was platted; and the mortgage, in terms, conveys all right, title, and interest of the grantors in and to the streets and alleys. The stipulation provides for a release of one or more acres, at any one time, or of lots on the same basis; and we think, in case of lots, the estimate should include all the land as in case of a release by the acre. The difference is, in case of lots, that the release is of smaller parcels of land; but, in the aggregate, the amount and area must be the same. The judgment seems to us to be right, and it is AFFIRMED.