[Civ. No. 2194. Third Appellate District.—November 24, 1920.]

## SACRAMENTO SUBURBAN FRUIT LANDS COMPANY (a Corporation), Appellant, v. MARTHA M. WHALEY et al., Respondents.

[1] COVENANT—GRANT OF REAL PROPERTY—DIRECT BENEFIT OF LAND—CONSTRUCTION OF CODE.—The phrase "for the direct benefit of the property" as it is used in section 1462 of the Civil Code, which provides every covenant contained in a grant of an estate in real property which is made for the direct benefit of the property or some part of it then in existence runs with the land, was not intended to be nor is it restricted in its meaning to such physical benefit only as may directly accrue to the land from the covenant, but it means also any covenant which affects the title to real property or any interest or estate therein of the covenantee.

[2] ID.—MORTGAGE—PARTIAL RELEASE—COVENANT FOR DIRECT BENEFIT OF LAND.—A covenant in a mortgage providing for the removal of the lien from certain specified portions of the land is a covenant for the unfettering, *pro tanto*, of the title, and is, therefore, for the direct benefit of the land.

[3] ID. — VALIDITY OF RELEASE PROVISION — RIGHT OF GRANTEE OF MORTGAGOR.—A provision in a mortgage of several parcels of land that the mortgagee shall release any ten-acre lot or more from the lien upon payment by the "mortgagors" to the mortgagee of a stated amount per acre for each acre so to be released is not so indefinite and uncertain as to the particular ten-acre lot upon which the release is to operate as to be unenforceable, since it was the intention of the parties that under the provision the mortgagor was at liberty to select any particular ten-acre tract he desired, and the covenant being one running with the land, the grantee or assignee of the mortgagor has the same right of selection.

[4] ID.—DEFAULT OF MORTGAGOR—ENFORCEMENT OF RELEASE CLAUSE. The right to an enforcement of a release clause in a mortgage exists after default and after the commencement of a foreclosure action, in the absence of any limitation in the covenant as to time or in event of default.

APPEAL from an interlocutory decree of foreclosure of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. W. S. Butler and B. F. Van Dyke for Appellant.

William M. Brown for Respondents.

HART, J.—The defendants Martha A. Whaley and A. O. Whaley (whose middle initial· is printed in the transcript both G. and C. by mistake), husband and wife, executed on February 19, 1914, a mortgage to appellant upon seven lots in Rio Linda Subdivision No. 2, a portion of the Rancho Del Paso, in Sacramento County, California, to secure the payment of a note for $6,748 due on or before February 19, 1919, with interest at six per cent per year, payable yearly. Said mortgage contained the following provision: "Said mortgagee shall release any ten acre lot or more from the lien of this mortgage upon the payment by the said mortgagors to the mortgagee of one hundred and twenty-five ($125.00) per acre for each acre so to be released." Said covenant, it will be noticed, did not run to heirs and assigns.

The seven lots so mortgaged ranged in area from 5.689 acres to 13.309 acres, and the total area was 59.889 acres. Subsequent to the execution and delivery of said mortgage the said mortgagors executed and delivered a trust deed to J. R. Hicks, a trustee for Los Angeles Finance Company, and said Whaley and husband, covering the land described in said mortgage, which trust deed recited that it was made to secure a note for one thousand dollars ($1,000) and was subject to said mortgage for six thousand seven hundred and forty-eight dollars ($6,748). Thereafter said note and trust deed were assigned to cross-complainant, First National Bank of Orange County, California. Defendants failed to pay interest, or taxes, after February 19, 1917, and in March, 1918, plaintiff announced its intention to consider the whole sum of principal and interest due and so notified the mortgagors and J. R. Hicks, trustee, and defendant First National Bank of Orange. Thereafter, said interest, taxes, and principal being due, unpaid, and in default, on May 24, 1918, defendant R. J. Hicks, as trustee, and defendant First National Bank of Orange, tendered to plaintiff the sum of four thousand three hundred and seventy-five ($4,375) dollars, being a sum in excess of $125 per acre for the acreage contained

in said five lots, to wit, lots 97, 98, 99, 100, and 101 (amounting to 34.86 acres), but not sufficient to cover the delinquent taxes on these lots paid by the plaintiff for the mortgagors, and leaving out of consideration the interest then due on said mortgage note.

The answer and the cross-complaint of defendant, First National Bank of Orange County, and defendant R. J. Hicks, trustee, contain the following allegation, which is undenied by the plaintiff in its answer to said cross-complaint: "That on or about the twenty-fourth day of May, 1918, these cross-complainants duly tendered to the said Sacramento Suburban Fruit Lands Company the sum of $4,375, together with such further sum as said Sacramento Surburban Fruit Lands Company had expended in taxes or other expenses for the lands next hereinafter described and requested said Company to release from the lien of said mortgage the lands described in said mortgage as lots numbered 97, 98, 99, 100, and 101 of Rio Linda Subdivision No. 2; that said lots contain 34.86 acres but that said company refused to release said property from the lien of said mortgage."

Paragraph XII renews the above offer.

The court made its interlocutory decree, which also embraced findings harmonizing with the allegations of the cross-complaint of defendant, First National Bank of Orange, etc., and R. J. Hicks, as trustee, etc., as to the execution and delivery of the promissory note and the trust deed to secure said note, above referred to, and the offer of the cross-complainants "to pay plaintiff the sum of $125 per acre for the release from the lien of plaintiff's said mortgage of said lots Nos. 97, 98, 99, 100, and 101 aforesaid, containing in the aggregate 34.86 acres of land, together with all sums previously paid by the said plaintiff for taxes on said lots since the nineteenth day of January, 1916, the same being the date of said note and deed of trust, as aforesaid (which said taxes so paid to this date the court now finds amount to the sum of $134.93), with interest on said payments from the date of the payment thereof to the date of repayment at the rate of seven per cent per annum; . . . that at the time the said offer was made by defendants as aforesaid, the said mortgagors, to wit, the defendants Martha M. Whaley,

A. C. Whaley, John L. Whaley, Theophile Giraud, and Los Angeles Finance Company, a corporation, were in default to the said plaintiff in the performance of the terms of said promissory note and mortgage, and that said plaintiff had prior to said time elected to treat all sums of principal and interest under said promissory note as due and payable, and that notice of such election and also notice of such default had prior to the making of said offer been served by said plaintiff on the said defendants and also upon First National Bank of Orange, California, a corporation, and upon R. J. Hicks, trustee, as aforesaid. That no sale of the property secured by said deed of trust under the power contained in said deed of trust given has ever been had and that, subject to plaintiff's mortgage and to said deed of trust and the power of sale therein contained, the defendant John L. Whaley is now, and at all times herein mentioned has been, the owner of said property described in plaintiff's mortgage.''

The operative terms of the decree are as follows: ''Now, therefore, it is ordered, adjudged, and decreed that if the defendants, First National Bank of Orange, California, a corporation, and R. J. Hicks, trustee as aforesaid, shall within ten days from the date of service of notice of the entry of this order upon them or upon their said attorney, pay into the court for the use of plaintiff, the sum of $4,357.50, together with the sum of $134.93 taxes paid by plaintiff on said land prior to this date with interest thereon as aforesaid, then they shall be entitled to final judgment that said Lots Nos. 97, 98, 99, 100, and 101 are released from the lien of said mortgage and that as to said lots no sale shall be made under the foreclosure of said mortgage. The plaintiff shall, in that event, be entitled to final judgment foreclosing said mortgage as to the remainder of the property described in said mortgage and in plaintiff's complaint, and hereinabove described, and directing sale thereof in the manner provided by law. If said sum be not so paid within the time limited as above, then plaintiff shall be entitled to final judgment foreclosing said mortgage as to all of said property in said mortgage described and hereinabove described, and adjudging that a sale be made thereof in the manner provided by law, and further adjudging that defendants and cross-complainants First National Bank of

Orange, California, a corporation, and R. J. Hicks, Trustee as aforesaid, take nothing by reason of their answer and cross-complaint herein and that they be forever restrained and enjoined from asserting any right, title, claim, or interest of, in, or to said property or any part thereof."

This is an appeal by the plaintiff from the said interlocutory decree.

In support of his appeal, the plaintiff contends: 1. That the covenant to release from the lien of the mortgage any ten-acre lot or more of the tract upon which the mortgage lien exists upon payments made by the mortgagor as provided in said covenant does not inure to the benefit of subsequent encumbrancers; 2. That the release clause of the mortgage is indefinite and uncertain as to the particular ten-acre lot from which the mortgage burden may be removed upon the compliance by the mortgagor with the condition therein specified, inasmuch as the interlocutory decree shows "that there was no ten-acre lot in the mortgaged tract"; 3. That, conceding that said release clause is under any circumstances enforceable as in favor of a subsequent encumbrancer, the defendant in this case is not entitled to its enforcement in his behalf for the reason that "the mortgagor was in default for interest and taxes," and the mortgagee had, for such default, and previously to the demand by the defendant for the release of ten acres of the mortgaged tract, with an offer to pay for the same, including taxes and interest, as required by the release clause, declared the whole amount of principal, interest, and taxes due and payable.

The first proposition to which attention is invited involves the question whether the release clause of the mortgage may be taken advantage of by a subsequent encumbrancer, and this question must find its solution in the determination of the further question whether said release clause involves a covenant running with the land subject to the lien of the mortgage or is a mere personal privilege running alone to the benefit of the mortgagor.

Covenants running with the land are those only that are specified in title III, third division, of the Civil Code (Civ. Code, sec. 1461), and section 1462 describes generally such covenants as follows: "Every covenant contained in a grant of an estate in real property, which is made for the

direct benefit of the property, or some part of it then in existence, runs with the land.''

Section 1463, Id., provides: ''The last section [1462] includes covenants 'of warranty,' 'for quiet enjoyment,' or for further assurance on the part of the grantor, and covenants for the payment of rent, or of taxes or assessments upon the land, on the part of the grantee.''

Unless, however, the covenant comes clearly within the description of those specifically mentioned in section 1463, the general test determinative of the question whether a certain covenant runs with the land would seem to be whether it is for the direct benefit of the land. And this naturally opens up an inquiry as to the scope or meaning of the phrase, ''for the direct benefit of the land.''

[1] We do not understand that that phrase or expression, as it is used in section 1462, was intended to be or is restricted in its meaning to such *physical* benefit only as may directly accrue to the land from the covenant, but that it means also any covenant which affects the title to real property or any interest or estate therein of the covenantee. A covenant made for the direct benefit of the land is one which is intended to restore to the covenantee or the owner of the land some right with respect thereto which he has parted with *pro re nata* or for a special purpose. It is, in other words, a covenant for the direct benefit of the estate or interest of the covenantee in the land mortgaged. (*Standard Oil Co.* v. *Slye,* 164 Cal. 435, 442, [129 Pac. 589].) While, under the statutory law of this state a mortgage does not vest in the mortgagee an estate or interest in the mortgaged land, yet the mortgage affects the mortgagor's title. [2] A covenant in a mortgage providing for the removal of the lien of the mortgage from certain specified portions of the land mortgaged is a covenant for the unfettering, *pro tanto,* of the title, and is, therefore, for the direct benefit of the land.

Section 1463 of the Civil Code lends support to the foregoing views, for, as will be observed, it is by said section declared that the ''last section [1462] *includes* covenants of warranty, for quiet enjoyment,'' etc. In other words, the legislature has itself, by section 1463, interpreted or given us the meaning, to an extent, of the phrase, as

used in section 1462, "direct benefit of the property," and it seems to be clear from said section 1463 that if the covenant is one which concerns the land itself, or in any manner or measure affects its title or any interest therein, then it is, within the meaning of that phrase as it is employed in section 1462, "made for the direct benefit of the real property" to which it relates.

Mr. Washburn, in his work on Real Property, volume 2, section 1205, states the rule as follows: "Such covenants, and such only, run with the land as concern the land itself, in whosesoever hands it may be, and become united with, and form a part of, the consideration for which the land, or some interest in it, is parted with, between the covenantor and covenantee."

In *Coburn* v. *Goodall*, 72 Cal. 498, [1 Am. St. Rep. 75, 14 Pac. 190], the action was to recover damages for the breach of a covenant in a lease, whereby the lessee covenanted to surrender the demised premises, with the improvements thereon, at the expiration of the term. The supreme court held said covenant to be one running with the demised land, and said: "It is claimed that these four defendants, if liable at all under the covenant to surrender (which is denied), are liable only in respect of their privity of estate, and that such liability is several and proportionate to the interest acquired by each of them. To this proposition we cannot assent. There are some authorities to that effect, but the weight of opinion, we believe, is contrary thereto, and with better reason it is held that while assignees of a lease hold as tenants in common, they are jointly and severally liable on covenants to repair and *to deliver up at the end of the term.* These covenants, *which are connected with the estate, run with the land, and vest in point of benefit and liability in the assignee,* while the personal privity of contract between the lessors and lessee remains unaffected by the transfer. (1 Washburn on Real Property, 435, 329; 2 Platt on Leases, 351; Taylor on Landlord and Tenant, 7th ed., sec. 530, note; *Hayes* v. *Morrison,* 38 N. H. 95; *Fitch* v. *Johnson,* 104 Ill. 117.)"

In the present case, the covenant, as we have seen, provides for a release from the mortgage lien of any ten-acre lot or more for which the sum of $125 per acre, together with interest and taxes, has been paid. This in effect is

a provision that any ten-acre lot of the tract under mortgage as to which the payment terms of the covenant were complied with would be surrendered to the mortgagor free from the mortgage lien—in other words, to restore to the mortgagor an unqualified dominion over the property which he would not enjoy with the title to the fee encumbered by a lien to secure a debt. And manifestly it constituted a part of the consideration for which the mortgagor or covenantee surrendered such dominion by the execution of the mortgage on the land.

While the precise question here has never been, so far as we are informed upon the subject, passed upon by the appellate courts of this state, there is direct authority for the conclusion that such a covenant as we are now considering runs with the land.

Mr. Jones, in his work on Mortgages, volume 1, section 79, says that "whether such a covenant (for the partial release of lots embraced in the mortgage upon the payment of a stipulated sum) running only to the mortgagors, without mention of his assigns, is personal in character, and cannot be enforced by a purchaser from him, is a question upon which the authorities are not agreed, *but the better view is that such a covenant runs with the land.*"

In *Vawter* v. *Crafts,* 41 Minn. 14, [42 N. W. 483], the mortgage contained a covenant for partial releases of the mortgage lien upon platted lots of the mortgaged land upon the payment by the mortgagor of certain stipulated sums of money, equal to the value of the lots. This covenant did not run to the assigns of the mortgagor. Foreclosure proceedings against the entire tract were brought by the mortgagee after the mortgagor had sold some of the lots. The mortgagee having refused to accept the price of the lots so sold, together with interest and cost of foreclosure, tendered to him by the grantee of the mortgagor, action was brought by said grantee against the mortgagee to compel a release, the former offering to pay the amount due on the lots. The principal question there was as to the nature of the covenant for partial release, and, in holding that said covenant was one running with the land, the court said so much that has cogent application to the present case that we feel justified in quoting from the opinion *in extenso* as follows: "Defendant's first conten-

tion is that this covenant as to releases is purely a personal one with the mortgagors, and did not pass with the land to their grantees. Much abstruse and technical learning has been wasted in discussing the question what are and what are not covenants running with the land. But we think it will be found, by considering the principle underlying the subject, that, according to the best considered modern authorities, the law corresponds with common sense, and annexes a covenant to the land when the subject of it has something to be done or refrained from, about or touching, concerning or effecting, the covenantee's land (though not upon it), which would benefit the same, or increase its value in the hands of the holder. (*Shaber* v. *Water Co.*, 30 Minn. 179, [14 N. W. 874].) It is not necessary here to enter into a consideration of the distinction in certain respects that may exist between a transfer of the burden of a covenant running with the land, and of the benefit of the covenant; in other words, of the liability to fulfill the covenant, and of the right to exact its performance. The rule, we think, is universal that the benefit passes with the land to which it is incident. In the case at bar the agreement or covenant is one relating to the rights of the parties in the land. It affects the title, and hence affects the value of the estate of the holder. The release is for the benefit of the owner; in fact, no one but the owner could be benefited by it. It would be against reason if it did not inure to the grantee of the covenantee. This provision was manifestly inserted in the mortgage with reference to the sale of these lots, when platted, to different parties, and to facilitate such sales. These sales could be made in two ways: First, by the mortgagors paying the sum or sums stipulated, and obtaining a release, and then conveying clear title to the purchaser; or, second, selling subject to the mortgage, and leaving it to the purchaser to pay and obtain the release. It is argued, from the fact that the covenant does not contain the words "or assigns," it was intended as a personal one with the mortgagors. We do not think that fact is entitled to any weight. The question must be determined from the nature and subject matter of the covenant itself." (See, also, *Gammell* v. *Goode*, 103 Iowa, 301, [72 N. W. 531].)

[3] 2. There is no legal force to the contention that the release cannot be enforced because it is indefinite and uncertain as to the particular ten-acre lot upon which the release was to operate. This contention would be as tenable against the mortgagor as it would be as against his assignee or grantee, and, as it would not be maintainable as against the former, it certainly cannot be as against the trustee under the trust deed who stands in the shoes of the mortgagor with respect to any rights created by the release clause.

The appeal here is supported alone by the judgment-roll, and, if there was evidence received extrinsic to the mortgage itself, disclosing a particular purpose for the insertion in the mortgage of the covenant of release, it is not here. But it is to be remarked that such covenants in mortgages covering tracts of land are not uncommon, and very often if not generally are in furtherance of a scheme whereby the mortgagor has purchased a tract of land for the purpose of subdividing it into smaller lots and selling the subdivisions, has borrowed money to pay the purchase price of the whole tract and mortgaged the land to secure the debt so incurred, or perhaps has purchased the land from the mortgagee and given the latter a mortgage on the same to secure the purchase price, and for the purpose of enabling the mortgagor to sell the subdivisions and give to his grantee a title free from the mortgage lien, a release clause such as the one here is inserted in the mortgage. But whether or not this was in fact the scheme involved in the transaction resulting in the execution of the mortgage in this case, the fact remains that it was the evident intention of the parties that, under the release clause, the mortgagor was at liberty to select any particular ten-acre tract or more that he desired to select, pay the stipulated amount per acre therefore to the mortgagee and thereupon be entitled to receive a release of the mortgage lien from the lot thus selected. And, as above suggested, if this was his right under the release clause, so it was his grantee's right, since, as we have held, the said clause inured to the benefit of the latter.

The cases of *McComber* v. *Mills*, 80 Cal. 111, [22 Pac. 55], and *Ontario Land Co.* v. *Bedford*, 90 Cal. 181, [27 Pac. 39], dealt with mortgages containing release

clauses substantially like the one in this case, and while no point was made therein of the indefiniteness of the clause by reason of the fact that no specifically designated or described lot was therein referred to, it was nevertheless held that the release clauses were sufficient and binding on the mortgagee. (See, also, *Gammell* v. *Goode,* 103 Iowa, 301, [72 N. W. 531].) But in *Lane* v. *Allen,* 162 Ill. 426, [44 N. E. 831], the supreme court of Illinois held that, under a release clause in a mortgage to the effect that the mortgaged premises might be subdivided and that "on payment of $500 or more, at any time or times, on the indebtedness secured hereby, a part or parts of said premises shall be released" from the lien of the mortgage, the contention that the subdivision must precede the payments, in order to entitle the party paying to a partial release, was not in harmony with a rational construction of the release clause. (See, also, *Clark* v. *Fountain,* 135 Mass. 464.) The larger number of the cases relied upon by the appellant to sustain its position as to the nonenforceability of the clause in question because it does not contain a specific or some sufficient description of the ten-acre lot or more for which a release might be had upon payment therefor, have to do with actions involving conveyances of property which did not contain such a description of the real property sought to be conveyed as to facilitate a ready identification of the property from the deeds themselves and the instruments of conveyance were held void because of patent ambiguities in the descriptions. Two of those actions were in ejectment and one to reform a mortgage by correcting the description of the land. But in *McCormick* v. *Parsons,* 195 Mo. 92, [92 S. W. 1162], cited here by appellant, it was held that (quoting from the syllabi), "when a deed of trust contains a provision that for every six hundred dollars paid one acre of the tract conveyed shall be released from the lien of the trust, the provision is void for indefiniteness of the description of the part to be released." It was further held that such a release provision in a trust deed "cannot be aided by the demand of the parties giving the deed that a certain part of the tract which they definitely described be released on account of the payment made by them."

The above case is the nearest approach to the appellant's position here of any to which our attention has been called. The conclusion reached therein is expressly based upon the rule applicable to cases of conveyances of real property heretofore referred to. There is, however, a distinction which, we think, is substantial or does not involve a mere refinement in logic, between the release clause in *McCormick* v. *Parsons* and the release clause in this case. It will be noted that in the former case the clause reads: "for every six hundred dollars paid *one acre* of the tract conveyed shall be released," etc., whereas, the clause in this case is that the release shall be upon "*any* ten-acre lot or more . . . upon the payment," etc. In other words, while in *McCormick* v. *Parsons* the mortgage provides for the release upon some *one acre* of the tract, in the present case the provision is for the release of *any* ten-acre lot or more, which, as that language clearly implies, may be selected by the mortgagor himself, and that such was the intention of the parties is plainly evidenced by the fact that there is no provision in the release clause or anywhere in the mortgage for the platting or subdivision of the tract into lots of any size or dimensions.

Moreover, it seems to us (and this suggestion is with the utmost deference to the court deciding the case) that if, in *McCormick* v. *Parsons* it was made to appear that the grantee of the trustee had actually paid the required amount for one acre of the tract, the court, exercising its extraordinary equity powers, could well have so framed its decree as to have prevented so unjust and inequitable a result as the court seems to have been compelled to arrive at in that case. But however that may be, we still think the distinction between the two cases pointed out above is sufficient to deprive the McCormick-Parsons case of its force as an authority in support of the position of the appellant here.

[4] 3. No California cases are cited upon the point involving the question whether the right to an enforcement of the release clause still subsisted after default in the payment of interest and taxes and after the mortgage holder had declared the whole amount of principal, interest, and taxes due and payable because of such default. The following cases from other jurisdictions, however, hold

that the right to a partial release, by the payment of a stipulated sum, is available after default in payment and the commencement of a foreclosure suit: *Vawter* v. *Crafts,* 41 Minn. 14, [42 N. W. 483] ; *Gammell* v. *Goode,* 103 Iowa, 301, [72 N. W. 531] ; *Nims* v. *Vaughn,* 40 Mich. 356; *Chrisman* v. *Hay,* 43 Fed. 552.

In *Gammell* v. *Goode* it .is said: "It is thought that the right is not available after default in payment, and the commencement of suit to foreclose. There is no such limitation in the covenant. The right seems coextensive with the existence of the mortgage. We do not see how the doctrine of laches can affect this right of release, under the terms of the stipulation. The only laches claimed is the default in payment. When E. J. Goode purchased the lot in question he had the right to understand that, upon the payment of so much, he would be entitled to a release. The stipulation in the mortgage does not say upon payment of so much in a particular time, or without default, but on payment of so much 'at any one time.' "

It will be observed that the release clause with which we are directly concerned contains no provision specifying a particular time at which payments may be made.

4. Another point made by the appellant (not included in the points as they are above stated) is that the defendant failed to tender the amount due on the lot. We think the tender was sufficient. The cross-complaint alleges, as we have shown, and the court found, that the cross-complainant (defendants in plaintiff's action) on or about the twenty-fourth day of May "tendered to the said Sacramento Suburban Fruit Lands Company the sum of $4,375, together with such further sum as said . . . company had expended in taxes or other expenses for the lands," and further alleges that "these defendants now renew said offer to said . . . company in gold coin of the U. S., the sum of $125 per acre for every acre contained in the lots described in . . . this cross-complaint, together with such further sums as said . . . company may have expended for taxes or other charges against said property."

What the total sum of the taxes paid by the plaintiff on the lots and the interest was, was presumably known to the plaintiff, but probably not known to the defendants, and in that case the offer to pay whatever that sum was, with

the offer to pay the exact amount due upon the principal, constituted, under the circumstances, a sufficient tender.

The decree appealed from appears to provide for an equitable adjustment of the controversy between these parties. The plaintiff will receive precisely what its contract calls for and what it agreed to take for the lots, and there is nothing to indicate that in the selection of the particular lots involved herein that plaintiff will suffer any loss or disadvantage. To the contrary, the release clause itself clearly indicates that it was a matter of indifference to the plaintiff what particular portions of the tract might be selected upon payment therefor, so long as the lots were ten or more acres in size.

The decree is affirmed.

Prewett, P. J., *pro tem.*, and Burnett, J., concurred.