## TOOLE–TIETZEN & CO. v. COLORADO RIVER DEVELOPMENT CO. et al.
### No. 107.

District Court, S. D. California, Central Division.
March 11, 1930.

O'Melveny, Tuller & Myers, Homer I. Mitchell, and B. E. Ahlport, all of Los Angeles, Cal., for complainant.

Martin Forrest, of Los Angeles, Cal., for defendant White.

JAMES, District Judge.

Plaintiff is the holder, by assignment, of a mortgage given by defendant Colorado River Development Company to secure payment of two promissory notes, each in the sum of $37,500, dated December 30, 1927, payable three years after date, with interest at six per cent. per annum, payable semiannually. There was also a chattel mortgage covering personal property situated on the land mortgaged, given as additional security for the same debt. The property involved is ranch land, consisting of approximately 22,000 acres, located in the county of Riverside, Cal. The mortgage first referred to contained the provision that upon default in the payment of any interest due, the total debt should, at the option of the holder of the mortgage, become immediately due and payable. In December, 1929, default was made in the payment of interest amounting to $2,250. Plaintiff seasonably gave notice of its election to declare the whole debt due and payable, and thereafter, on February 1, 1930, filed this action to secure foreclosure of its mortgages, and at the same time prayed for the appointment of a receiver.

It was made to appear at the time plaintiff presented its application in the latter behalf, that the mortgagor had ceased to operate the property and had practically abandoned it. That condition has continued and at the time of the hearing of the special matter which this order particularly concerns, there had been no change in that regard. The character of the property, it being ranch land and being equipped with tools, ranch houses, and some live stock, made it plainly necessary that some one should be placed in charge of

it. Ground for the appointment of a receiver therefore existed, regardless of whether it was made to appear, with reasonable probability, that plaintiff's security would be by neglect so depreciated as to become insufficient upon sale to discharge the mortgage debt. After his appointment, the receiver presented his application for authority to issue receiver's certificates in the amount of $40,000, with interest at ten per cent. The showing made was that there was a large amount of taxes, both by way of assessment by state and county, as well as of the Palo Verde Irrigation District, upon which the lands involved were dependent for their supply of water for irrigation.

Defendant White, who holds a lien against the land second to that of plaintiff's mortgage, to secure payment of a debt of $30,000, his security being evidenced in the form of a trust deed, objects to the creation by the receiver of a further debt against the property, setting forth, among other things, that it is not essential to farm the land or to preserve its rights with the irrigation district. He questions the receiver's claim that there are taxes due, and generally expresses his view that, in the presence of this foreclosure suit, the property should be allowed to remain uncultivated and uncared for, and suffer whatever damage it might by reason of the failure to assure the land of water supply. These objections on the part of the second lienholder are pertinent, of course, if he stands in a position to be damaged in the event the receiver's application to issue certificates is allowed. Plainly, he could be damaged only in the event the sale price obtained for the property equaled less than the sum secured by plaintiff's mortgage, plus the amount of the debt created by the receiver, plus an amount sufficient to satisfy the White claim. However, it is found by examining the verified answer made to the receiver's petition by defendant White, that defendant White fairly declares that the property is of a value greatly in excess of the sum of the mortgage indebtedness together with any probable amount that the receiver may require to use in prosecuting farming operations. On page 5 of Mr. White's verified answer, he asserts that in March, of 1929, an appraisal was made by a firm of engineers and appraisers, and that the value of the land was by those appraisers fixed at the sum of $1,577,198.38, and he alleges further as follows: "That the said land is now in the same condition, if not better than at the time of said appraisal, by reason of the recent clearing by the said Colorado River Development Company of 250 acres of heretofore uncleared land in the area known as Settling Basin * . * * and denies that said real property will * * * be damaged or reduced in value to such an extent, or any extent, that the real property will probably, or at all, be insufficient to secure the various obligations, or any obligations, for which defendant Colorado River Development Company has hypothecated said real property. * * * "

If the market value of the land is one-half of the sum that defendant White assigns to it, by no possibility will he suffer loss. He does not contend that the use and cultivation of the land will be a detriment to it, and such cannot be the case. I have before adverted to the fact that under the condition of practical abandonment in which the land stood at the time this suit was brought, sufficient ground existed to warrant the appointment of a receiver.

The mortgage contract made by the Colorado River Development Company with plaintiff's assignor contained a term giving to the mortgagor the privilege of making partial payments in discharge of the mortgage debt, and of having portions of the acreage released when such payments were made. The defendant White, since the commencement of this suit, made a selection of a certain 1,318.61 acres, tendering the sum of $3 per acre, or a total of $3,955.83. The sum tendered was correct as to the amount required under the release clause of the mortgage. The question of the right to have such a release made is, more probably, one to be settled by the decree in the foreclosure suit, where the various interests will be adjudicated. However, if it is to be now assumed that defendant White intends to have presented for the court's consideration an application for an order directing the receiver to release to him the ground claimed, an opinion may well be indicated. I note first that it is conceded by the plaintiff and the receiver that the holder of the second lien is clothed with all of the right of the mortgagor in asking for a partial release to be made; this is upon the assumption, as it is held in Sacramento S. F. L. Co. v. Whaley, 50 Cal. App. 125, 194 P. 1054, that the release clause expressed a covenant which runs with the land. If the decision mentioned rests upon an interpretation of the statute law of California, and the interpretation be deemed correct, then the concession made is a necessary one. There are cases to the contrary, decided upon principle, but in view of the stipulation offered, the opinions of the courts are of no moment.

852

The question left for solution, therefore, is only as to whether the defendant White, standing in the shoes of the mortgagor, may, after default made in the payment of interest secured by the mortgage, and after suit to foreclose has. been commenced, urge that he still has the right to obtain a partial release of the mortgaged land. The California case cited above considered a situation where the claim for release was made prior to the filing of the foreclosure suit. The federal case cited by the judge writing the opinion, as sustaining that view, was the case of Chrisman v. Hay (C.·C.) 43 F. 552. It was held in that case, under the facts there considered, that a release might be obtained after default, but it was directly held that such release could not be claimed after foreclosure suit brought. The California case referred to does not meet the situation here presented, and if it did, it is not binding upon the federal court. In the first place, it is not a final decision by the highest court of the state; in the second place, the federal courts will interpret contracts for themselves without regard to state decisions, and further, in the application of equitable rules and principles, federal courts will act in disregard of the decisions of state courts, even within the state in which such federal courts exercise their jurisdiction. Decisions of the highest court of a state, construing a statute of that state, are binding on the federal tribunals, and settled decisions which in their effect establish a rule of property are generally recognized. The question here presented does not belong to either class referred to. While the mortgage contract did provide for partial releases to be made, it also provided that, when the mortgagor became in default in his obligations, the whole amount of the debt might be declared due. As a matter of reasonable interpretation of the contract itself, it seems to me that it should be said that when the moment arrived that, through the fault of the mortgagor, the whole debt was matured, the privilege of making partial payments and obtaining partial releases was at once cut off. And if we call into use equitable principles, it would seem inescapable that the special release conditions in favor of the mortgagor be deemed reciprocal with the obligation imposed upon him to fully perform those acts which he contracted to do in favor of the opposite party. My own reasoning leads me to the conclusion, whether arrived at by construing the terms of the contract in a logical way, or applying equitable considerations to the situation as presented, that defendant White has not obtained a right to have the release made of the particular acreage desired by him.

It is ordered that the petition of the receiver to be allowed to issue receiver's certificates in the amount and for the purposes set forth in his petition, be granted. The conditions are made, however, that no greater acreage than that worked or farmed during the preceding year be farmed, worked, or cultivated during the year 1930; that the purchase of materials and supplies, and the employment of labor be only in such an amount as strict business judgment requires, using great economy; that the operations of the receiver, in the behalf considered, shall contemplate only the carrying through of the agricultural operations for the present year, and not include any preparation for the working of the ranch for succeeding years. Said receiver shall, at least once every sixty days, file a full report of his expenditures, and a statement of the work being done by him or under his direction, and a copy thereof at the same time shall be furnished to the defendant White.