[Civ. No. 1702.   Fourth Appellate District.—May 7, 1935.]

AARON E. HOUTZ, Appellant, v. BEEMAN INVESTMENT CORPORATION et al., Defendants; EMMA BAHN, Respondent.

H. E. Allport for Appellant.

Myra Grether Collins and Kiggens & Hoffman for Respondent.

BARNARD, P. J.—This is an action to foreclose a mortgage covering a subdivision known as tract 9215 in Los Angeles County. The mortgage contained a release clause wherein the mortgagor agreed to subdivide the property and the mortgagee agreed to release lots in the tract upon the payment of $470 as to some of the lots and $700 as to other larger lots. The release clause further provided that the mortgagee was to join in the execution of a subdivision map and that the mortgagor might make payments at any time in amounts of not less than $2,000 and "shall be entitled to credit therefor in respect to thereafter releasing any of said lots".

In 1927 the Beeman Investment Corporation, the mortgagor, paid $940 to the mortgagee and received a release for lots 167 and 168 of the tract in question. Later this mortgagor paid another $940 and was given another release for the same two lots. In 1929 the defendant Bahn purchased the

south half of lot 179 of said tract. On January 8, 1931, the mortgagee gave to the mortgagor a written extension of the mortgage for three and one-half years. On May 19, 1932, the defendant Bahn paid the full purchase price and the Beeman Investment Corporation tendered to the mortgagee the sum of $350 and requested a release for the south half of lot 179. This request was refused by the mortgagee for the reason that lot 179 was one of the larger lots which was to be released upon the payment of $700. No default existed at that time but in July, 1932, the mortgagor defaulted in the payment of interest and this foreclosure action followed.

Judgment was entered in favor of the defendant Bahn releasing the south half of lot 179 from the lien of the mortgage but otherwise in favor of the plaintiff. From that portion of the judgment in favor of the defendant Bahn, the plaintiff has appealed.

The gist of the appellant's contentions is that there was no privity between the respondent and himself, that he had extended the mortgage with a certain amount of land as security for the remaining indebtedness, that after such extension the mortgagor could not claim any release of lots on account of the former double payment, and that the respondent, claiming under the mortgagor, is in no better position.

The respondent is not a complete "stranger" to him and his mortgage, as the appellant insists. Such a release clause runs with the land and inures to the benefit of such a purchaser. (*Sacramento S. F. L. Co.* v. *Whaley,* 50 Cal. App. 125 [194 Pac. 1054].) By the terms of this mortgage the appellant had required the mortgagor to subdivide the property and sell the same in lots. This was in part for the benefit of the appellant and it may not be said that he owed no duty whatever to a purchaser thus authorized and invited by him. The appellant admits that he knew that a mistake had been made and that a double release had been issued on the same lots within ten days after the same occurred. Knowing this fact he retained the money paid and from that time on the mortgagor was entitled to additional releases corresponding to that amount. The renewal of the mortgage did not change any of its terms but merely extended the time of payment. There is nothing in the record to indicate that this renewal was made upon any condition

that any right then held by the mortgagor should be waived. Another part of the release clause provided that payments in amounts of not less than $2,000 could be made at any time and that the mortgagor should be entitled to thereafter have any of the lots released corresponding to such payment. While the payment here in question was less than $2,000, the appellant could waive that part of the provision. Under either of these theories the mortgagor had paid an amount more than sufficient to release one of the larger lots and had the right to demand such a release. The respondent was equitably entitled to the benefit of this right of the mortgagor. █ After the respondent paid the full purchase price for the half lot in question the mortgagor tendered a further payment of $350 and demanded a release for her benefit. While, strictly speaking, the last tender was not sufficient in itself, the appellant then held money for which he was obligated under the terms of the mortgage to release such a lot. Under these circumstances, we think the respondent was entitled to the protection of a court of equity, and that her equities were superior to any right of the appellant to stand on any strict and technical interpretation of the contract between himself and the mortgagor.

The appellant chose this forum and in seeking equitable relief must be governed by its rules. One of the first rules of equity is that he who seeks equity must do equity. The respondent as one of the purchasers contemplated by the agreement, between the mortgagor and the appellant, had paid the full purchase price before any default existed under the terms of the mortgage. The mortgagor in turn had paid to the appellant an amount considerably in excess of that required to release the whole of lot 179, for which amount no lots had been released. The court had the power and it was its duty to prevent so unjust and inequitable a result as that now contended for by the appellant, and the relief demanded by the appellant was properly given upon the condition that the equitable rights of the respondent be protected.

The portion of the judgment appealed from is affirmed.

Marks, J., and Jennings, J., concurred.