[Civ. No. 7427.   Fourth Dist.   Feb. 2, 1965.]

WALTER F. CONLEY et al., Plaintiffs and Respondents, v. POWAY LAND AND INVESTMENT COMPANY et al., Defendants and Appellants.

Shaw & Miller, Joseph M. Shaw and Simon Miller for Defendants and Appellants.

Gray, Cary, Ames & Frye, J. Sterling Hutcheson and John W. Poulos for Plaintiffs and Respondents.

FINLEY, J. pro tem.*—This is an appeal by defendant Poway Land and Investment Company, a limited partnership and the two general partners thereof, from a judgment ordering the partnership (hereinafter referred to as ''Poway'') as trustor under a deed of trust to quitclaim back to Title Insurance and Trust Company, trustee, title to 38 acres of land claimed by the plaintiff-respondent beneficiaries under the deed of trust to have been illegally reconveyed by said trustee to the trustor, defendant-appellant Poway.

In 1959 respondents sold to Poway 1,150 acres of land in San Diego County for $1,305,250, of which $80,330 was paid into escrow to cover commissions and expenses. A purchase price trust deed secured note, at 6 per cent interest payable semi-annually, was given for the balance of the purchase price. By agreement, Poway was to pay the interest, taxes and principal and was given the right to select, describe and demand reconveyance of the chosen acreage upon the payment of a release price of $1,149 per acre. On March 14, 1960, Poway paid $40,250 on the principal, of which only $38,632.50 was due, the overpayment being intended to entitle Poway to a reconveyance of an even 50 acres. No request for reconveyance of any land was made at that time. The subsequent transactions were as follows:

(a)  7- 1-60: Poway paid interest, $36,811.59.
(b) 11-10-60: Poway paid on account of taxes for the first half of the year, $13,000.
(c) 12-31-60: Poway requested and trustee reconveyed a designated 10 acres.
(d) 12-31-60: Poway requested and trustee reconveyed a designated 2.27 acres.
(e)  1- 1-61: Poway paid interest, $35,307.47.
(f)  4-10-61: Poway defaulted on last half of taxes due 4-1-61.
(g)  6- 8-61: Poway requested and trustee reconveyed a designated 38 acres which was .27 acres in excess of the 50 acres purportedly covered by the $40,250 paid by Poway on principal on March 14, 1960.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Poway admits a miscalculation and that at the time this 38-acre parcel was released the $40,250 payment was short $750 which, coupled with the .27 acre overconveyance, made a total shortage of $971.40 principal payment remaining unpaid.

One of the covenants by Poway was that it would pay the taxes before due. It therefore was not in default in this respect when the $40,250 payment was made, but it was in default when it requested reconveyance and when the reconveyance was made. The trial court found that the property had been wrongfully released, ordered Poway to quitclaim the property back to the trustee, removed the cloud on the title and quieted the title in the trustee.

Appellants argue that:

1. Poway obtained a vested right to a release of acreage upon payment of the $40,250, since it was not then in default. A later default cannot deprive it of its vested right, since the delay has not prejudiced the respondents in any manner.

2. There was no requirement that a demand, a specific description of the property desired, and an actual reconveyance must all occur before any default. Once the payment was made before any default, the remainder of the transaction was only a formality between Poway and the trustee.

3. Poway's letter accompanying the payment of $40,250, stating that the overpayment was to enable it to claim 50 acres, can be considered as constituting a demand.

4. The court of equity did not consider the equities in the case, since the court has caused a forfeiture, contrary to the California equity principle of relief from forfeiture whenever possible. Respondents could be made whole by ordering Poway to pay the shortage of $971.40 rather than cancelling its right to property 30 times more valuable than the amount of shortage.

Respondents argue that:

1. The primary and continuing condition upon which the release of any acreage depended was the absence of default. Once there was a default, the trustee was without power to release any acreage. Two conditions must occur before the trustee may execute a release: (a) the payment of the correct amount of money, and (b) a demand by the defendant on the trustee to convey acreage of a particular description. Since Poway had not made a demand which designated the acreage to be reconveyed before default occurred, one of the necessary conditions precedent to the accrual of its right to

a partial reconveyance was not met; hence, it had no vested right.

2. Poway failed to make a payment of a sufficient sum, according to the trust deed, that would entitle it to the 38-acre parcel that was transferred.

3. The trial court did not divest Poway of any right, but simply reestablished the respondents' security on the note by imposing the lien of the trust deed upon the 38-acre parcel as set forth in the trust deed until the terms of that instrument are adhered to.

4. Poway seeks to invoke equity when it has not done equity. It chose not to make the requisite principal payment and demand under the terms of the partial release clause, and it was Poway which chose to default. The only conduct on respondents' part was to seek to have their security reinstated and the terms of the agreement complied with by Poway.

5. Where the contract sets up certain restrictions to preserve the security of the beneficiaries, the violation of those restrictions by the trustee and trustor should not cause the forfeiture of the beneficiaries' lien.

█ That this is an action calling upon the equity powers of the courts is admitted by all parties. On the other hand, it does involve interpretation of a contract in the form of a deed of trust, which is a matter of law. █ The deed of trust contains the following provision: "So long as the trustor be not in default concerning any of the covenants contained herein or with respect to the payments due on the promissory note secured hereby, a partial reconveyance may be had and will be given from the lien or charge hereof of any portion of the property herein before described upon payment of an amount to apply on the principal of said note, based on a rate of $1,149.00 for each acre. . . . Trustor may at any time make a payment to Trustee, for the purpose of securing a partial reconveyance in which event Trustee shall, without the necessity of any approval by Beneficiary or Beneficiaries or the securing of any further documents, make a partial reconveyance of such portion or portions of the property hereinbefore described as Trustor may request provided only so much acreage shall be reconveyed as Trustor has paid for at the rate per acre mentioned in this paragraph . . ."

At the time Poway made the $40,250 payment it was not legally entitled to have reconveyed to it the entire 38 acres which the trustee later actually did reconvey. It is not disputed that this payment on principal was $971.40 short of

enough to pay for the reconveyance of 38 acres. But under the terms of the deed of trust, had Poway requested or demanded title to the acreage which the $40,250 would actually have paid for, with a description of the property to be reconveyed, its right to the reconveyance could not have been denied. But the right thus acquired by Poway by this payment was never actuated during the no-default period. When the reconveyance was finally made by the trustee, Poway was in default and does not question the fact that the trustee exceeded its authority in reconveying more acreage than had been paid for by Poway approximately 15 months earlier. The question presented here is whether under these circumstances and in view of the wording of the deed of trust, Poway is entitled to have this court hold that the trial court abused its equity powers by its judgment invalidating this reconveyance, quieting title to the acreage in the trustee and removing the cloud on the title without including some provision protecting the rights of Poway.

Appellants maintain that the judgment of the trial court results in a forfeiture which the law abhors. But in making this argument, we feel that appellants misapply the term "forfeiture."

In *Kortright* v. *Cady,* 21 N.Y. 343, 365 [78 Am. Dec. 145], the court had this to say: "The word 'forfeiture,' still so often used in reference to mortgages, is no longer the expression of principle, as it once was. There is now no forfeiture of a mortgaged estate. The mortgagor's rights may be foreclosed by a sentence in the courts or by a sale had in the manner prescribed by the statute law, if he has himself in the contract given authority thus to sell; but, until foreclosure, his estate the day after a default is exactly what it was the day before."

The judgment of the trial court did not amount to an all-time loss of the 38 acres to Poway. It merely returned this property to the status of unredeemed property under the deed of trust redeemable by said trustor upon the curing of its default. This interpretation of the judgment necessarily follows the following finding of fact:

## "IX

"That the effect of carrying out the judgment in this case is to restore the security of the plaintiffs and not to divest defendant POWAY LAND & INVESTMENT Co. of its interest in said land as trustor."

Were delay in requesting reconveyance and supplying a description of the acreage desired the only factor involved

here, equitable considerations would surely dictate an unqualified judgment in appellants' favor. The cases of *Park Inv. Co.* v. *Vanderzee Bros. Bldg. Co.*, 119 N.J. Equity 1 [180 A. 838]; *Bleyer* v. *Veeder*, 119 N.J. Equity 398 [183 A. 203] and *Deering Harvester Co.* v. *C. L. Smith, Farm Land Development Co.*, 146 La. 301 [83 So. 580] all include elements other than those involved here. But the discussions therein are of some persuasion.

Respondents maintain that: ''The sole purpose of the default limitation in the release clause was to otherwise limit the right to a release which would exist absent the default limitation.'' Citing *Sacramento Suburban Fruit Lands Co.* v. *Whaley*, 50 Cal.App. 125 [194 P. 1054]. Conceding this position to be valid it does not follow that the purpose of the default limitation extended to the point of divesting the trustor of a right once it had accrued. We interpret the language of the deed of trust to mean that no right to reconveyance could accrue while the trustor was in default but that it has no application to such rights accrued before default. The cases cited by respondents are not authority to the contrary nor are they authority for the contention that demand for reconveyance must precede the default. As a matter of fact *Sacramento Suburban Fruit Lands Co.* v. *Whaley, supra,* and cases cited therein supply California authority nearest in point to the case at bar. At page 136 the court has this to say:

''No California cases are cited upon the point involving the question whether the right to an enforcement of the release clause still subsisted after default in the payment of interest and taxes and after the mortgage holder had declared the whole amount of principal, interest, and taxes due and payable because of such default. The following cases from other jurisdictions, however, hold that the right to a partial release, by the payment of a stipulated sum, is available after default in payment and the commencement of a foreclosure suit: *Vawter* v. *Crafts*, 41 Minn. 14 [42 N.W. 483]; *Gammell* v. *Goode,* 103 Iowa 301 [72 N.W. 531]; *Nims* v. *Vaughn,* 40 Mich. 356; *Chrisman* v. *Hay*, 43 F. 552.

''In *Gammell* v. *Goode* it is said: 'It is thought that the right is not available after default in payment and the commencement of suit to foreclose. There is no such limitation in the covenant. The right seems coextensive with the existence of the mortgage. We do not see how the doctrine of laches can affect this right of release, under the terms of the stipulation. The only laches claimed is the default in payment.

" 'When E. J. Goode purchased the lot in question he had the right to understand that, upon payment of so much, he would be entitled to a release. The stipulation in the mortgage does not say upon payment of so much in a particular time, or without default, but on payment of so much "at any one time.' "

"It will be observed that the release clause with which we are directly concerned contains no provision specifying a particular time at which payments may be made."

We hold that failure on the part of Poway to require performance by the trustee before said trustor had defaulted in other particulars did not extinguish its right to have reconveyed that which it had actually paid for and that this right survived default. However, the trustee did exceed its authority in conveying more acreage than Poway had paid for. Consequently, the judgment will be modified to provide that Poway is entitled to receive from the trustee a new reconveyance of so much of the specific land ordered returned to the trustee as was actually covered by Poway's payment before default. As so modified, the judgment is affirmed. The respective parties will bear their own costs on appeal.

Coughlin, Acting P. J., and Brown (Gerald), J., concurred.

On February 24, 1965, the opinion and judgment were modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied April 21, 1965.